UNITED STATES DISTRICT COURT
For the
Western District of Texas

FILED
2025 SEP 10 AM 10: 00
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ___CR___ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | Misc. Action No. |
| RUTHIA HE, A/K/A RUJIA HE,<br>and DAVID BRODY<br>*Defendant.* | §<br>§<br>§<br>§ | 1:25MC01464 RP |

## NON-PARTY THE TEXAS STATE BOARD OF PHARMACY'S MOTION TO QUASH DEFENDANTS' SUBPOENAS DUCES TECUM

Non-party, The Texas State Board of Pharmacy (TSBP), by and through the Office of the Attorney General of Texas, respectfully requests this Court quash the subpoena deuces tecum issued by Defendant for the production of documents.

### BACKGROUND

The Defendant in the above-styled case issued a subpoena to the TSBP requesting "The current PDMP report (reflecting prescription data for Texas, as well as all 50 states, if available), dating back to the earliest available record and continuing through the present for the relevant patients listed in Attachment A." See Exhibit A "Subpoena." TSBP understands "PDMP" to refer to the prescription drug monitoring program database information, which is known in Texas as the Prescription Monitoring Program (PMP). The PMP is managed by the Texas State Board of Pharmacy (TSBP).

1

The subpoena set a compliance deadline for August 27; the same day that TSBP received service of the subpoena. Counsel for TSBP and Defendant conferred on and met via teleconference on September 3. Defendant's counsel agreed to withdraw the request for data from "all 50 states, if available" and to limit the timeframe of the requested documents from "the earliest available record" to beginning in 2015. Defendant's counsel also agreed to extend the deadline to respond until September 10.

Following counsels' efforts to confer and based upon the applicable law and Texas statutory provisions, the subpoena as modified implicates legal restrictions on disclosure and compliance and should be quashed.

I.   **Legal Standard for Non-party Subpoenas**

Under Federal Rules of Criminal Procedure, the court may quash or modify a subpoena that would be unreasonable or oppressive. Fed. R. Crim. P. 17(c)(2). Courts must evaluate the particular facts to determine whether compliance is unreasonable or oppressive in light of the burdens imposed and the interests at stake. *United States v. Bergeson*, 425 F.3d 1221, 1225–26 (9th Cir. 2005). A criminal defendant who seeks non-party documents by subpoena bears the burden of showing the threshold requirements by a preponderance of the evidence that the subpoena duces tecum is: (1) relevant, (2) admissible, and (3) specific, which is generally understood to be brought in good faith and not as a "general fishing expedition." See *States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992); *United States v. Komisaruk*, 885 F.2d 490, 494 (9th Cir. 1989); *United States v. Nixon*, 418 U.S. 683, 700 (1974). If these factors are not

met, then the subpoena duces tecum is deemed "unreasonable or oppressive" and must be quashed. *Id.*

## LEGAL ARGUEMENT

### II. Defendant has not established that the PMP records are relevant.

To satisfy the first *Nixon* prong, the requesting party must show a sufficient likelihood that the documents sought are relevant to the offenses charged. *Arditti*, 955 F.2d at 345. Relevance requires more than speculation; the materials must bear a logical connection to facts of consequence in determining the charges, meaning they must tend to make the existence of such a fact more or less probable. *United States v. Potts*, No. H-16-0147-01, 2017 WL 1314193, at 2 (S.D. Tex. Apr. 6, 2017).

Rule 17 subpoenas must seek material with real relevance to the specific counts at issue, not simply tangential or cumulative evidence. *United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005). Here, it is not at all clear that the defense has met its burden of demonstrating relevance under *Nixon*. The defense appears to rest on the notion that a limited number of prescriptions may have been issued by other reputable providers, and that, by extension, the Defendant's conduct was lawful or represented a proper exercise of medical judgment. Such isolated examples would have little bearing on whether the overall prescribing practices spanning thousands of prescriptions were medically appropriate or legally compliant. If that is the extent of their showing, the probative value of the data is attenuated, at best. Here, the information potentially available would not be exculpatory or related to the charges it is at best circumstantial and conclusionary. Ultimately, it remains the Defendant's

3

obligation to articulate with specificity how the requested information is relevant to the charges, and it is not apparent that they have yet done so in this case.

### III. PMP Data Is Inadmissible.

The second *Nixon* prong requires a preliminary showing that the materials sought could reasonably be admitted with respect to the offenses charged. *United States v. Moultrie*, No. 3:08-CR-14, 2008 WL 3539745, at *3 (N.D. Miss. Aug. 8, 2008). Under the admissibility prong of *Nixon*, subpoenas should be quashed where the requested evidence would be inadmissible, including where production would infringe on privileges, constitutional protections, or statutory prohibitions. *See* generally *United States v. Carriles*, 263 F.R.D. 400, 405 (W.D. Tex. 2009) *United States v. Reyes*, 293 F.R.D. 591, 598 (N.D. Cal. 2006); *United States v. Tomison*, 969 F. Supp. 587, 597 (E.D. Cal. 1997). Because TSBP is prohibited by law from providing the requested data the PMP data is not admissible.

#### A. TSBP Is Statutorily Prohibited from Releasing the PMP Data to Defendants.

The TSBP collects, manages, analyzes, and provides information regarding Schedule II, III, IV, and V controlled substances pursuant to the Texas Controlled Substances Act. Tex. Health & Safety Code §§ 481.001 *et seq*. The PMP is the mechanism by which TSBP receives prescription data from dispensers of drugs defined in sections 481.032-.036 of the Texas and scheduled in accordance with Texas Health & Safety Code § 481.034. The Texas PMP is a patient care tool that is used to inform prescribing practices, prevent prescription drug abuse, and assist law

4

enforcement and health profession regulators address nontherapeutic prescribing and dispensing practices.

Prescription information submitted to the TSBP in accordance with Texas Health & Safety Code § 481.076 (1)-(9) is deemed confidential. Section 481.076(a) expressly provides: "The board may not permit any person to have access to information submitted to the board under Section 481.074(q) or 481.075...". *See* Tex. Health & Safety Code § 481.076(a). Authorized access is limited to prescribers, dispensers, certain licensing and regulatory agencies, and law enforcement in narrow circumstances. Criminal defendants and their counsel are not included among the persons entitled to access PMP data. *Id.*

Texas state law sets strict standards for failing to uphold these standards and as such the request would not only require the custodian to act *ultra vires* but would also subject them to potential civil penalties.

The statute reads.

> "ADMINISTRATIVE PENALTY: DISCLOSURE OR USE OF INFORMATION. (a) A person authorized to receive information under Section 481.076(a) may not disclose or use the information in a manner not authorized by this subchapter or other law.
>
> (b) A regulatory agency that issues a license, certification, or registration to a prescriber or dispenser shall periodically update the administrative penalties, or any applicable disciplinary guidelines concerning the penalties, assessed by that agency for conduct that violates Subsection (a).
>
> (c) The agency shall set the penalties in an amount sufficient to deter the conduct."

5

Tex. Health & Safety Code § 481.0768

Further, Tex. Health & Safety Code § 481.0769 imposes criminal penalties against a custodian who releases information in violation of that chapter.

> "CRIMINAL OFFENSES RELATED TO PRESCRIPTION INFORMATION. (a) A person authorized to receive information under Section 481.076(a) commits an offense if the person discloses or uses the information in a manner not authorized by this subchapter or other law.
>
> (b) A person requesting information under Section 481.076(a-6) commits an offense if the person makes a material misrepresentation or fails to disclose a material fact in the request for information under that subsection.
>
> (c) An offense under Subsection (a) is a Class A misdemeanor.
>
> (d) An offense under Subsection (b) is a Class C misdemeanor."

Tex. Health & Safety Code § 481.0769

Because Texas law does not authorize disclosure of PMP records to a criminal defendant, compliance with such a subpoena would subject the custodian of records to potential administrative penalty and criminal liability in Texas state courts. The only other exception under §§ 481.0768(a) or 481.0769(a), referring to "other law" applies to the authorized uses and disclosures of the acquiring law enforcement or prosecutorial body which does not apply to Defendant. For that reason, compliance is impossible under state law, and therefore oppressive and unreasonable within the meaning of Rule 17(c)(2).

Furthermore, the supremacy clause does not save Defendant's subpoena

because HIPPA's PMP regulations do not conflict with the regulations provided in the Texas Safety Code. Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, in the absence of federal express or field preemption, federal law would only displace state law when compliance with both is impossible or when state law poses an obstacle to federal objectives. See generally *Arizona v. United States*, 567 U.S. 387, 398–400, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012). HIPAA does not require disclosure of protected health information; it merely authorizes disclosure in certain circumstances, such as when accompanied by a subpoena and protective order. See 45 C.F.R. § 164.512(e). HIPAA also expressly preserves state laws that provide stricter privacy protections. 45 C.F.R. § 160.203(b).

Texas Health & Safety Code §§ 481.076 and 481.0769 impose stricter confidentiality standards by deeming PMP data confidential and penalizing unauthorized disclosure. Because TSBP can comply with both HIPAA and Texas law by withholding PMP information absent statutory authorization, there is no direct conflict and no basis for federal preemption. Courts have recognized that HIPAA establishes a minimum level of privacy protection rather than a maximum, leaving states free to adopt more stringent rules.

Moreover, TSBP is not a HIPAA "covered entity." HIPAA applies to health plans, clearinghouses, and certain health care providers, but the Board functions as a regulatory agency that collects prescription data under state law. Because it does not fall within HIPAA's definition of a covered entity, the statute does not itself mandate how the Board manages or discloses PMP information. Instead, the Board's

7

responsibilities in this area are set out by Texas law, which treats PMP data as confidential and limits disclosure to specific circumstances.

### B. Disclosing PMP Information Violates the Fourth Amendment and Article I, Section 9 of the Texas Constitution.

The United States Supreme Court recognized that prescription records implicate fundamental privacy interests, both in avoiding disclosure of personal matters and in preserving the independence of medical decision-making. *Whalen v. Roe,* 429 U.S. 589, 599–600 (1977). In *Roe*, New York's precursor to a prescription drug monitoring program was challenged under the Fourth and Fourteenth Amendments. *Id.* In rejecting the appellee's argument that concern about public disclosure of prescription information may induce patients to refuse needed medication, the court explained that such public disclosure was expressly prohibited by state statute and regulation and criminally punishable by imprisonment and fine. *Id.* at 595.

Texas patients rely on the same similar civil and criminal sanctions (see above, Tex. Health & Safety Code §§ 481.0768, .0769) to prevent the public disclosure of their prescription information. Medical records contain some of the most private information about a person and thus are subject to Fourth Amendment scrutiny. *Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 648 (7th Cir. 2013). Texas law reflects the same principle. The TSBP maintains the PMP Program. By statute, PMP data is confidential and may only be disclosed in narrow circumstances to specifically authorized recipients. *See* Tex. Health & Safety Code § 481.076(a), (c)–(g).

Individuals maintain a reasonable expectation of privacy against third parties seeking access to their prescription information. Courts have emphasized the heightened privacy interest in PMP data, describing it as "intensely private" because it connects a person's identity to the drugs they take. *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 998 F. Supp. 2d 957, 963 (D. Or. 2014), rev'd on other grounds, 860 F.3d 1228 (9th Cir. 2017). Courts have been particularly attuned to the prescription record issue of personal expectation of privacy in prescription records. *United States v. Motley*, 89 F.4th 777, 791 (9th Cir. 2023) (Watford, J., concurring), cert. denied, 145 S. Ct. 573 (2024). The Defendants and their counsel are not among the persons entitled to access this information under Texas law. PMP

These concerns remain even where a protective order is in place. Although the subpoena attaches a protective order, it is directed only to the parties in this case. It does not expressly apply to third-party record holders or to the individuals whose prescription information would be disclosed. As a result, it is unclear whether those third parties' privacy and Fourth Amendment rights would be safeguarded.

Criminal discovery is tightly circumscribed: Rule 16 provides limited discovery rights, and Rule 17 subpoenas may not be used as a general discovery device but only for specific, evidentiary materials. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *Nixon* at 699–700. As previously discussed, Defendant must show relevance, admissibility, and specificity to justify enforcement. *Id.* When a subpoena fails to meet this standard, it can be invalidated on Fourth Amendment grounds. See

generally *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984); *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208 (1946).

Here, unlike where a statutory exception applies, the PMP records are not of individuals who are parties to the case and cannot assess relevance, and there has been no showing that third-party records meet the *Nixon* standard. The strong privacy protections in Texas law, together with the constitutional limits on criminal discovery, require that the subpoena be quashed notwithstanding the existence of a protective order.

### V. The Subpoena is an Impermissible Expansion of Discovery

The *Nixon* factors likewise require that a subpoena be issued in good faith and not serve as a broad fishing expedition. *Arditti, 955 F.2d at 345.* Criminal discovery is strictly limited by rule and precedent, and the Supreme Court has clearly articulated that there is no general constitutional right to discovery in criminal cases. *Weatherford v. Bursey*, 429 U.S. 545 (1977). Rule 16 of the Federal Rules of Criminal Procedure outlines the government's and the Defendant discovery obligations, but its scope is narrow. *Degen v. United States*, 517 U.S. 820, 825-26 (1996) (comparing limited discovery in criminal cases and the broad discovery in civil cases). Rule 17 was not designed to broaden those obligations. It permits subpoenas to secure specifically identified, evidentiary materials, not to provide an alternative path to discovery. *Bowman Dairy,* 341 U.S. at 220.

Courts have consistently rejected attempts to use Rule 17 to enlarge discovery rights. *Carriles,* 263 F.R.D. at 400, 405; *United States v. Hang,* 75 F.3d 1275, 1283

10

(8th Cir. 1996). A subpoena duces tecum cannot function as a substitute for the limited discovery otherwise permitted in a criminal case in the hope that favorable material might be discovered. *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010). Here, the subpoena duces tecum seeks prescription monitoring data from third parties not involved in the case in question. The burden rests with the defendant to demonstrate more than a "mere hope" that favorable evidence might be found. *Hang*, 75 F.3d at 1283; *United States v. Sellers*, 275 F.R.D. 620, 624 (D. Nev. 2011). Without a concrete showing that the requested records meet the *Nixon* standards, the subpoena is improper. The compelled disclosure of unrelated individuals' information is unsupported and contrary to both Rule 17's purpose and Texas's statutory protections. The subpoena should therefore be quashed.

## PRAYER

WHEREFORE PREMISES CONSIDERED, for the reasons discussed above, non-party TSBP respectfully asks the Court to quash Defendants' Subpoena duces tecum.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**ERNEST C. GARCIA**
Chief, Administrative Law Division

*/s/ Ted A. Ross*
Ted A. Ross
Assistant Attorney General
State Bar No. 24008890
Office of the Attorney General of Texas
Administrative Law Division
P. O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-4191
ted.ross@oag.texas.gov


*/s/ Sherlyn Harper*
**SHERLYN HARPER**
State Bar No. 24093176
Assistant Attorney General
Administrative Law Division
Office of the Attorney General of Texas
808 Travis Street, #1520
Houston, Texas 77002
Telephone: (713) 225-8913
Facsimile: (512) 320-0167
sherlyn.harper@oag.texas.gov

*/s/ Keegan Howe*
**KEEGAN HOWE**
Texas State Bar No. 24143028
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
ADMINISTRATIVE LAW DIVISION
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4195
Facsimile: (512) 320-0167
keegan.howe@oag.texas.gov
*Admission applied for and pending as of the date of filing*

***Counsel for Non-party, The Texas State Board of Pharmacy***

## CERTIFICATE OF CONFERENCE

On September 3, 2025, counsel for TSPB conferred with Steven Ballew, attorney for Defendant, via teleconference. After discussion, it became clear that the TSPB's compliance with the subpoena would be unlawful for the reasons set forth in this motion. Accordingly, TSPB files this Motion to Quash.

/s/ Ted A. Ross
Ted A. Ross
Attorney for non-party

## CERTIFICATE OF CONFERENCE

On September 3, 2025, counsel for TSPB conferred with Steven Ballew, attorney for Defendant, via teleconference. After discussion, it became clear that the TSPB's compliance with the subpoena would be unlawful for the reasons set forth in this motion. Accordingly, TSPB files this Motion to Quash.

/s/ Ted A. Ross
Ted A. Ross
Attorney for non-party

## CERTIFICATE OF SERVICE

I certify that on September 10, 2025, the foregoing document was served via electronic transmission upon the following counsel of record:

Steven Ballew
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
sballew@willkie.com
(310) 855-3016

*Attorney for Ruthia He*

/s/ Ted A. Ross
**Ted A. Ross**
State Bar No. 24008890
Office of the Attorney General of Texas
ted.ross@oag.texas.gov